## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| SPACECO BUSINESS SOLUTIONS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:12-CV-02029-RBJ |
| | ) | |
| vs. | ) | |
| | ) | |
| MASS ENGINEERED DESIGN, INC., | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JERRY MOSCOVITCH | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF SPACECO BUSINESS SOLUTIONS, INC.'S BRIEF IN RESPONSE TO THE DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Now comes SpaceCo Business Solutions, Inc. ("SpaceCo"), by and through undersigned counsel, and for its Brief in Response to the Defendants' Motion to Dismiss the Complaint states as follows:

**Table of Contents**

I.   Factual Background ................................................................................................. 5

II.  Legal Argument .................................................................................................... 7

  1.   The First Amended Complaint is Sufficiently Pled Under *Twombly* and *Iqbal*. ................. 8

  2.   This Court Unquestionably Has Specific Personal Jurisdiction Over the Defendants with Respect to the Tort Claims Alleged in the Complaint. ............................................... 9

    A.   The Defendants Have Minimum Contacts with Colorado under the Test of *Calder v. Jones*. ................................................................................................................ 9

    B.   Exercising Jurisdiction Over the Defendants in Colorado Does Not Offend Traditional Notions of Fair Play and Substantial Justice. ........................................................ 20

  3.   When the Court has Personal Jurisdiction Over Non-Patent Claims, Federal Circuit Precedent Supports the Invocation of Supplemental Jurisdiction over Patent Claims That Arise Out of a Common Nucleus of Operative Fact. ........................................................... 26

  4.   Fed. R. Civ. P. 4(k)(2) Provides an Alternative Independent Basis for Jurisdiction Over the Defendants. ........................................................................................................ 30

  5.   Venue for this Case is Proper in Colorado; Venue for this Dispute has Never Been Proper in Texas. ................................................................................................................. 32

  6.   Although Unnecessary for Deciding This Motion, This Court Also Has General Personal Jurisdiction Over the Defendants. ............................................................................. 35

III.   Conclusion ...................................................................................................... 37

## **Table of Authorities**

### CASES

*Arguello v. Woodworking Mach. Co.*, 838 P.2d 1120, 1122 (Utah 1992) .................................... 30

*Ashcroft v. Iqbal*, 566 U.S. 662 (2009) ........................................................................................ 7

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012 (Fed. Cir. 2009) ........................ 35

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082 (9th Cir. 2000)........................... 10

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................... 7

*Calder v. Jones*, 465 U.S. 783 (1984) ........................................................................................... 9

*Campbell Pet Co. v. Miale*, 542 F.3d 879 (Fed. Cir. 2008) .......................................................... 35

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063 (10th Cir. 2008) ................ passim

*Electronics for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1348 (Fed. Cir. 2003) .............................. 6

*Employers Mut. Cas. Co. v. Bartile Roofs, Inc.,*618 F.3d 1153 (10th Cir. 2010) .......................... 32

*Fielder v. Credit Acceptance Corp.*, 188 F.3d 1031, 1039 (8th Cir.1999) ................................... 28

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114 (9th Cir. 2002) 30

*Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408 (1984) .................................. 35

*Hicks v. Cadle*, 2012 U.S. Dist. LEXIS 137499 (D. Colo. Sept. 25, 2012)................................... 34

*In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009)................................................................. 20

*Int'l Shoe Co. v. Washington*, 326 U.S. at 316 (1945) ................................................................. 19

*OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1095 (10th Cir.1998)............. 20

*Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1280 (10th Cir. 2005)............................. 19

*Silent Drive, Inc. v. Strong Industries, Inc.,* 326 F.3d 1194, 1202 (Fed. Cir. 2003).............. passim

*Soma Medical International v. Standard Chartered Bank*, 196 F.3d 1292, 1296 (10th Cir.1999)

............................................................................................................................................... 30

*Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523 (10th Cir. 1996).........................15

*United States v. Swiss American Bank, Ltd*., 274 F.3d 610, 619–21 (1st Cir.2001)....................30

## STATUTES

28 U.S.C. § 1367(a) ....................................................................................................................28

28 U.S.C. § 1391(b)(2) ...........................................................................................................32, 33

28 U.S.C. § 1391(b)(3) ...............................................................................................................31

28 U.S.C. §1498...........................................................................................................................22

## RULES

Fed. R. Civ. P. 4(k)(2)..........................................................................................................29, 31

## TREATISES

13 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3523.1 (2002) .. 28

17 James Wm. Moore et al., Moore's Federal Practice § 110.04[1] (3d ed.2010) .......................32

## I.     Factual Background

This case arises out of prior litigation between the parties, wherein Mass Engineered and Jerry Moscovitch (hereinafter "Mass" or "Defendants") sued SpaceCo for alleged infringement of Mr. Moscovitch's U.S. Patent RE36,978 ("the '978 patent"), which pertains to a dual monitor support.  Mass began its campaign of enforcement of the '978 patent as far back as 2006, when Mass filed suit against a limited number of defendants, including Ergotron, Inc. and Dell Computer for infringement of the '978 patent.  The Dell and Ergotron accused products were essentially copies of the Mass monitor support design.  Mass prevailed in that case against Dell and Ergotron, and the case was subsequently settled without any appeals being taken in early 2009.

Emboldened by their win against Dell and Ergotron, Mass embarked on a course of litigation to assert the '978 patent against many varied products that were demonstrably outside the scope of the '978 patent's claims.  It is SpaceCo's contention that Mass embarked on sham litigation with the hope of leveraging settlement from many different monitor support arm manufacturers for products that unquestionably did not infringe the '978 patent. (See First Amended Complaint ¶¶ 60-71).  Thus, on November 12, 2009, Mass Engineered and Jerry Moscovitch filed suit against SpaceCo and twenty-nine (29) other defendants in the United States Court for the Eastern District of Texas, alleging that numerous products manufactured by each defendant infringed the '978 patent. (See First Amended Complaint ¶ 18).

Mass characterizes what followed as a "flurry of activity," but in reality it was anything but that.  This "flurry of activity" consisted mostly of Mass consenting to **no less than eighty-**

**eight (88) extensions of time**[1] for various defendants to answer.  From November of 2009 to February of 2012, a period of two and one quarter years, no substantive progress on the litigation was made. (See Exhibit "A," Hjort Declaration ¶ 3).  Most of the defendants had answered the complaint by the end of 2010, but Mass continued to consent to further extensions of time for a small number of defendants to answer, even though the case had been pending for over a year at that point. (See Exhibit "A," Hjort Declaration ¶ 4).  Finally, on February 21, 2012, Judge Gilstrap denied Mass's consented motion for a defendant's <u>tenth</u> extension of time to answer the complaint. (See Exhibit "A," Hjort Declaration ¶ 5).  Shortly thereafter, Judge Gilstrap set a scheduling conference for the case, and set a very fast schedule for claim construction, leading to a Markman hearing less than five (5) months after the initial scheduling conference. (See Exhibit "A," Hjort Declaration ¶ 6).

The parties entered agreed scheduling orders and exchanged preliminary infringement and invalidity contentions. (See Exhibit "A," Hjort Declaration ¶ 7).  It appeared that the case was finally on track for substantive resolution.  Then on July 31, 2012, counsel for Mass informed the defendants that Mass would stipulate to dismissal of the case.   The timing of this acquiescence to dismissal coincides with deadlines in the scheduling order for the parties to begin the briefing of the claim construction issues in earnest.  The Markman hearing was scheduled to occur forty-five (45) days later. (See Exhibit "A," Hjort Declaration ¶ 8).

Although Mass's acquiescence to dismissal of the case was astonishing at the time, in retrospect, the reasoning for it becomes clear: Mass's strategy of leveraging settlement of its baseless claims had failed.  Of the original thirty (30) defendants sued, only eleven (11) entered into settlements with Mass. (See Exhibit "A," Hjort Declaration ¶ 9).  All of these eleven (11)

---

[1] Not all of these extensions of time were distributed equally.  SpaceCo received one (1) extension of time before it filed its answer.  Other defendants received as many as ten (10) extensions to answer.  SpaceCo was the first defendant in the Texas action to answer.

defendants were small companies, with no significant exposure in the case.  The large manufacturers that were named as defendants, the proverbial "deep pockets" in the case, banded together in a joint defense agreement and were vigorously litigating Mass's baseless claims. (See Exhibit "A," Hjort Declaration ¶ 10). Knowing that their claims would be exposed as a sham at the Markman hearing and in the Markman ruling, Mass dismissed the case, rather than expend the time and costs necessary to put on the Markman hearing.

Of the nineteen (19) non-settling defendants from the Texas action, only five (5),[2] including SpaceCo, filed their own actions against Mass following the dismissal of the Texas action. (See Exhibit "A," Hjort Declaration ¶ 11).  Interestingly, a review of PACER dockets indicates that Mass has not commenced suit against any of the remaining fourteen (14) defendants who were dismissed from the Texas action and did not bring their own actions, even though it has been over six months since the dismissal of the Texas action. (See Exhibit "A," Hjort Declaration ¶ 12).

## II.      Legal Argument

The parties agree that as to the question of jurisdiction over the tort claims alleged in the Complaint, the law of Tenth Circuit applies, and as to the question of jurisdiction over the patent claims alleged in the Complaint, the law of the Federal Circuit applies.  *Electronics for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1348 (Fed. Cir. 2003).  As will be demonstrated below, the law of the Tenth Circuit clearly establishes that specific personal jurisdiction over the Defendants is proper with respect to the tort claims in the Complaint.  Additionally, in a fact pattern similar to this case, the Federal Circuit has held that when personal jurisdiction is proper for non-patent

_____

[2] One of these cases has subsequently been settled and dismissed.

claims, this Court can properly use its supplemental jurisdiction to dispose of patent claims that arise out of a common nucleus of operative fact with the non-patent claims.  For these reasons, the Defendants' arguments relative to any lack of personal jurisdiction in this case are meritless and their Motion to Dismiss must be denied.

      **1.**      **The First Amended Complaint is Sufficiently Pled Under *Twombly* and *Iqbal*.**

      As an initial point, SpaceCo wishes to address the arguments the Defendants make at page 8 of their Brief, regarding the sufficiency of the pleadings.  The Defendants claim that the First Amended Complaint does not meet the pleading standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 566 U.S. 662 (2009).  The Defendants specifically cite certain alleged deficiencies in the Complaint.  First, they claim the Complaint fails to specify the business they conduct in Colorado or identify the products they have delivered into Colorado.[3]  These facts are not in dispute.  The Defendants admit that they conduct business in Colorado and that they have sold products in Colorado. (See Wilk Declaration ¶¶13, 15 and 17).  The Defendants read too much into *Twombly* and *Iqbal* to argue that the allegations of the Complaint are defective. The Complaint alleges that the Defendants do business in Colorado and sold products in Colorado; the exact nature of their business or the exact identity of those products is not required in the pleadings.

      Next, the Defendants argue that the Complaint fails to allege how their enforcement of their patent is connected to Colorado.  The Defendants here ignore the allegations of paragraphs 61-65 and 67-71 of the First Amended Complaint which specifically allege tortious acts taken in the enforcement of their patent by the Defendants that resulted in injury to SpaceCo in Colorado.  Finally, the Defendants allege that the Complaint "fails to allege what 'tortious act' serves as the

---

[3] SpaceCo submits that by selling products in Colorado, one also does business in Colorado.

basis for jurisdiction regarding the abuse of process and malicious prosecution claims." Here, the Defendants read *Twombly* and *Iqbal* to the point of absurdity. The tortious acts are the acts giving rise to those torts, which acts are specifically set forth in paragraphs 61-65 and 67-71 of the Complaint. The alleged "deficiencies" pointed to by the Defendants do not amount to insufficient pleading under *Twombly* and *Iqbal.* The First Amended Complaint is sufficiently pled, and the Defendants' challenge to the pleading must be denied.

> **2.    This Court Unquestionably Has Specific Personal Jurisdiction Over the Defendants with Respect to the Tort Claims Alleged in the Complaint.**

> > **A.    The Defendants Have Minimum Contacts with Colorado under the Test of *Calder v. Jones.***

The Tenth Circuit has already held, in a case similar to this one involving an improper and tortious attempt to enforce intellectual property rights, that defendants are subject to personal jurisdiction in Colorado when they (a) engage in an intentional action, that was (b) expressly aimed at a Colorado resident, with (c) knowledge that the brunt of the injury would be felt in Colorado. All of these elements are present and properly alleged in the Complaint, thus specific personal jurisdiction over Mass and Jerry Moscovitch is proper in Colorado.

The Tenth Circuit case which established this rule is *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063 (10th Cir. 2008). In *Dudnikov*, the plaintiffs ran an unincorporated Internet-based business from their home in Colorado. Their business consisted of selling fabric and handmade crafts on eBay. In the course of conducting their business, the plaintiffs launched an auction on eBay offering fabric for sale with the imprint of a variation of a design of the artist known as Erté. The owner of the copyright in the Erté work (a British corporation) and its American agent (a Connecticut resident) filed a notice of claimed infringement ("NOCI") with

eBay, alleging that the auction infringed its copyright.  As a result of the filing of NOCI, eBay cancelled the auction.

Dudnikov subsequently filed a complaint in the United States District Court for the District of Colorado for a declaratory judgment clarifying that the sale of the contested fabric did not infringe defendants' copyrights, and an injunction preventing defendants from interfering with future sales of the fabric.  The defendants moved to dismiss for lack of personal jurisdiction, and the district court granted their motion.  On appeal, the Tenth Circuit reversed dismissal of the action, and found that specific personal jurisdiction existed over the defendants.

In holding that personal jurisdiction existed in *Dudnikov*, the Tenth Circuit began its analysis by noting that in the context of specific personal jurisdiction,

> the "minimum contacts" standard requires, first, that the out-of-state defendant must have "purposefully directed" its activities at residents of the forum state, and second, that the plaintiff's injuries must "arise out of" defendant's forum-related activities. Additionally, exercising personal jurisdiction over defendants must always be consonant with traditional notions of fair play and substantial justice.

*Dudnikov* at 1071. (citations omitted).

In evaluating the first element of this minimum contacts test, the Tenth Circuit applied the Supreme Court's holding in *Calder v. Jones*, 465 U.S. 783 (1984).  The Tenth Circuit observed:

> Distilling *Calder* to its essence, we thus understand the Court to have found purposeful direction there because of the presence of (a) an intentional action (writing, editing, and publishing the article), that was (b) expressly aimed at the forum state (the article was about a California resident and her activities in California; likewise it was drawn from California sources and widely distributed in that state), with (c) knowledge that the brunt of the injury would be felt in the forum state (defendants knew Ms. Jones was in California and her career revolved around the entertainment

> industry there). At plaintiffs' invitation, we turn our attention to examining the presence or absence of these same factors in their case.

*Dudnikov* at 1072.

As to the first factor in the *Calder* test, an intentional action taken by the defendant, the parties disagreed as to whether the act need just be intentional, or if it must be both intention and tortious. The Tenth Circuit held it was not necessary to decide this issue, because the factual allegations of Dudnikov's complaint properly alleged that the filing of the NOCI by the defendants was both an intentional act and a tortious act.

As to the second factor of the *Calder* test, that the defendant's act be expressly aimed at the forum state, the Tenth Circuit found this factor met, even though the defendant's filing of the NOCI occurred outside of the State of Colorado. The Tenth Circuit noted: "[t]hus, while, as defendants emphasize, the NOCI formally traveled only to California, it can be fairly characterized as an intended means to the further intended end of cancelling plaintiffs' auction in Colorado." *Dudnikov* at 1075. The Tenth Circuit adopted the reasoning of a case from the Ninth Circuit, *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082 (9th Cir. 2000), as it pertains to the "express aiming" factor:

> In *Bancroft*, a case perhaps even more analogous to ours, a small California company that sold computer and networking products and services, Bancroft & Masters, registered the domain name masters.com with Network Solutions Inc. ("NSI"), a company based in Virginia. Augusta National, which operates the Augusta National Golf Club and sponsors the Masters golf tournament, sent a letter from its headquarters in Georgia to NSI in Virginia, asserting that Bancroft & Masters had violated its trademark. Much as under the VeRO procedures at issue here, Augusta National's complaint had the effect, under NSI policy, of prohibiting Bancroft & Masters from retaining its domain name unless it obtained a declaratory judgment that it was not infringing on Augusta National's marks. Bancroft & Masters brought such a suit in California and our sister circuit held that, <u>because Augusta</u>

> National's purpose was specifically to target a known California business, it satisfied Calder's "express aiming" test despite the fact that letter was formally sent to Virginia rather than California. 223 F.3d at 1087-88. Precisely the same reasoning applies here.

*Dudnikov* at 1076 (emphasis added).

As to the third *Calder* factor, the "purposeful direction" factor, the Tenth Circuit found that factor easily met: "[i]n our case, the question where the brunt or bulk of harm need take place makes little difference, as there is no meaningful dispute that plaintiffs' injury was suffered entirely in the forum state, Colorado." *Dudnikov* at 1077.   The *Dudnikov* defendants unsuccessfully argued that Dudnikov's complaint alleged only "mere foreseeability" of injury in Colorado and not "something more" that would be required to establish personal jurisdiction. The Tenth Circuit rejected this argument noting:

> But under the *Calder* test plaintiffs have invoked, they must establish, and have established for purposes of a motion to dismiss decided on the pleadings and affidavits, not only that defendants foresaw (or knew) that the effects of their conduct would be felt in the forum state, but also that defendants undertook *intentional actions that were expressly aimed at that forum state.* That is, in satisfying *Calder's* first two prongs, plaintiffs have established that defendants acted with more than foresight (or knowledge) that effects would be felt in Colorado….
>
> defendants here more than foresaw or knew the harm alleged to have befallen forum residents; indeed, they do not dispute that they *intended* to cause the cancellation of plaintiffs' auction, and it is that precise alleged harm that plaintiffs seek to have redressed through this suit. As our sister circuit has said, actions that "are performed for the very purpose of having their consequences felt in the forum state" are more than sufficient to support a finding of purposeful direction under *Calder.*

*Dudnikov* at 1077-1078.

When all three factors of the *Calder* test are met, the "purposefully directed" element of minimum contacts is met.   Having determined that defendants "purposefully directed" their

activities at Colorado, the court must then consider the second element of minimum contacts: whether plaintiffs' injuries "arise out of" defendants' contacts with the forum jurisdiction. *Dudnikov* at 1078. As to the "arising out of" element, the Tenth Circuit observed as follows:

> As between the remaining but-for and proximate causation tests, we have no need to pick sides today. On the facts of this case, we are satisfied that either theory adopted by our sister circuits would support a determination that plaintiffs' cause of action arises from the defendants' contact with Colorado. That defendants' contact with Colorado, the sending of the NOCI to eBay and the ensuing e-mail exchange in which defendants threatened plaintiffs with suit, is a but-for cause of this action is clear. After all, if defendants had not claimed that plaintiffs were infringing their copyright, plaintiffs would have had no reason to seek a declaratory judgment that their actions did not run afoul of defendants' rights. The NOCI was also the cause in fact of the real world harm that plaintiffs seek to have remedied: the cancellation of their auction and the black mark on their eBay record. In the absence of the NOCI, plaintiffs would not have had to contend with either of those effects, and thus would have had no reason to attempt to hale defendants into court.
>
> We believe that the NOCI can also fairly be considered the proximate cause of plaintiffs' claim. In the NOCI, defendants swore under penalty of perjury that they had a good faith belief that plaintiffs' auction infringed their rights. The merits of plaintiffs' declaratory judgment action addresses the exact same question, and their claim for injunctive relief seeks to prevent future interference with plaintiffs' business, interference which defendants have threatened. More specifically, plaintiffs argue that defendants' infringement claim contained in the NOCI is incorrect, and that therefore their auction was improperly cancelled and their sales record erroneously smeared. The NOCI is thus at the very core of plaintiffs' suit.
>
> *Dudnikov* at 1079.

Applying the analysis of *Dudnikov* to the case *sub judice*, there can be no question that Mass and Jerry Moscovitch have minimum contacts with Colorado. The first factor of the *Calder* test is met: Mass and Mr. Moscovitch committed the intentional act of filing the Texas lawsuit against SpaceCo, which lawsuit was baseless and tortious. The filing of the Texas

complaint is the intentional act for the purposes of the *Calder* test and this intentional act is alleged in the First Amendment Complaint.[4]  (See First Amended Complaint ¶61).  Both Mass and Jerry Moscovitch are named plaintiffs in the Texas action. (See First Amended Complaint ¶62).  By virtue of Mass and Mr. Moscovitch both being named plaintiffs in the Texas action, the inescapable conclusion is that the filing of the Texas action was the intentional act of both Mass and Jerry Moscovitch.  There is no logical way to conclude otherwise; no one is "accidentally" named as a plaintiff in a lawsuit.

Furthermore, the filing of the Texas action was an intentionally tortious act, because the filing constituted both abuse of process and malicious prosecution.  SpaceCo has alleged in the First Amended Complaint facts tending to show that the filing of the Texas action constituted abuse of process.  These facts include: that Mass and Mr. Moscovitch brought the Texas action with an ulterior purpose in the use of judicial proceedings to extract royalties from SpaceCo to which they were not entitled, by alleging objectively and subjectively baseless claims of infringement against SpaceCo, in a hostile forum and intermingled with many other defendants in the hopes that SpaceCo would enter into a settlement on these baseless claims. (First Amended Complaint ¶63).  SpaceCo also alleged that Mass and Mr. Moscovitch engaged in willful and intentional actions in the use of process in the Texas action that are not proper in the regular conduct of a proceeding, including: 1. bringing baseless claims of infringement against SpaceCo; 2. taking no action to advance the prosecution of the Texas action for almost three (3) years; and 3. when compelled by the Texas court to take action to prosecute the case, voluntarily dismissing the case without prejudice. (First Amended Complaint ¶64).

---

[4] The Defendants cite a single case, *Wallace v. Herron,* from the Seventh Circuit for the proposition that specific jurisdiction does not exist for out of state defendants accused of malicious prosecution.  *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, is the controlling precedent of the Tenth Circuit on this issue, and simply put, a twenty-seven year old case from the Seventh Circuit is irrelevant to this analysis.

Similarly, SpaceCo has alleged facts in the First Amended Complaint tending to establish that the filing of the Texas action amounted to malicious prosecution, including: that the Texas action ended in favor of SpaceCo by virtue of the Defendants' voluntary dismissal of the Texas action not made in furtherance of settlement.   (First Amended Complaint ¶68).   SpaceCo also alleged that the Defendants' had no probable cause to bring the Texas action because there is no basis in fact or in law to allege that the SpaceCo products alleged to infringe by the Defendants actually do infringe any claim of the subject patent. (First Amended Complaint ¶69).   Finally, SpaceCo alleged that the Defendants acted intentionally and with malice, in that their purpose was the extraction of royalties from SpaceCo to which they were not entitled, by alleging objectively and subjectively baseless claims of infringement against SpaceCo, in a hostile forum and intermingled with any other defendants in the hopes that SpaceCo would enter into a settlement on these baseless claims. (First Amended Complaint ¶70).   For the purposes of this Motion, all of these facts alleged in the First Amended Complaint must be taken as true. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).   The allegations of the First Amended Complaint satisfy the first element of the *Calder* test, and show that the Defendants committed an intentional and tortious act that provides a basis for specific personal jurisdiction.

The second element of the *Calder* test, the "expressly aimed" element, is also clearly met. The fact pattern in this case is almost exactly the same as that in *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*  In *Dudnikov¸* the defendants sent a NOCI to eBay in California, falsely and tortuously accusing Dudnikov of infringement.   Here, Mass and Mr. Moscovitch filed a lawsuit in Texas falsely and tortuously accusing SpaceCo of infringement.   Just as in *Dudnikov*, Mass and Mr. Moscovitch's lawsuit, while it formally travelled only to Texas, it can be fairly

characterized as an intended means to the further intended end of extracting improper royalties from SpaceCo in Colorado.  As the Tenth Circuit held in *Dudnikov*, where the defendant's purpose was to specifically target a known Colorado business, the "express aiming" test is met, even though the defendant's activities took place outside of Colorado. *Dudnikov* at 1076.  In this case, the Defendants' purpose was specifically to target a known Colorado business[5], and *Calder's* "express aiming" test is satisfied despite the fact that the lawsuit was formally filed in Texas rather than in Colorado.  The actions of Mass and Mr. Moscovitch, in targeting a known Colorado business satisfy the second element of the *Calder* test.

Having demonstrated that the first and second *Calder* factors are met, proof of the third *Calder* factor, "purposeful direction," is easily made.  There can be no meaningful dispute that SpaceCo's injury was suffered entirely in Colorado.  Because of the Defendants' tortious actions in filing their baseless claim of infringement in Texas, SpaceCo was put to considerable expense in the defense of that baseless lawsuit. (See Exhibit "A," Hjort Declaration ¶ 13).  The bills and charges for the defense of the Defendants' tortious suit came to SpaceCo's headquarters in Colorado, and in paying the costs for the defense of this baseless and tortious suit, SpaceCo was injured in Colorado. (See Exhibit "A," Hjort Declaration ¶ 14).

The Defendants cite *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523 (10th Cir. 1996), for the proposition that "the mere foreseeability of causing injury in another state is not a sufficient benchmark for exercising personal jurisdiction."  The Defendants reliance on *Trierweiler* is misplaced for several reasons.  First, the facts of *Trierweiler* were much different than in the instant case.  The plaintiff in *Trierweiler* had originally brought his case in Michigan,

---

[5] There can be no question that Mass and Mr. Moscovitch knew that SpaceCo was a known Colorado business.  In the Texas complaint, they alleged "Mass is informed and believes, and on that basis alleges, that Defendant SpaceCo Business Solutions, Inc. ("SBSI") is a corporation organized and existing under the laws of the State of Nevada and has a place of business at 13100 E. Albrook Dr. Suite 100 Denver, CO 80239."  See First Amended Complaint, Exhibit "B" at ¶11.

against a large number of defendants, some in Colorado and others in Michigan who had participated in a failed financial transaction. The Michigan court transferred the case to Colorado, and then the Colorado court determined that it did not have jurisdiction over certain parties that were located in Michigan. These facts are markedly different from the ones at issue in the present case. The second reason why *Trierweiler* is inapposite to the present case, is that the claims alleged in *Trierweiler* were for professional negligence in connection with the advice rendered relative to the failed financial transaction. In this case, the claims are for the intentional torts of abuse of process and malicious prosecution.

The most important reason, however, as to why *Trierweiler's* holding is inapposite to this case is that the reasoning of *Trierweiler* was specifically rejected in *Dudnikov*. The Defendants here make the same argument that the *Dudnikov* defendants unsuccessfully made, alleging that Dudnikov's complaint alleged only "mere foreseeability" of injury in Colorado and not "something more" that would be required to establish personal jurisdiction. The Tenth Circuit specifically rejected this argument noting:

> But under the *Calder* test plaintiffs have invoked, they must establish, and have established for purposes of a motion to dismiss decided on the pleadings and affidavits, not only that defendants foresaw (or knew) that the effects of their conduct would be felt in the forum state, but also that defendants undertook *intentional actions that were expressly aimed at that forum state.* That is, in satisfying *Calder's* first two prongs, plaintiffs have established that defendants acted with more than foresight (or knowledge) that effects would be felt in Colorado….
>
> defendants here more than foresaw or knew the harm alleged to have befallen forum residents; indeed, they do not dispute that they *intended* to cause the cancellation of plaintiffs' auction, and it is that precise alleged harm that plaintiffs seek to have redressed through this suit. As our sister circuit has said, actions that "are performed for the very purpose of having their consequences felt in the forum state" are more than sufficient to support a finding of purposeful direction under *Calder.*

*Dudnikov* at 1077-1078.

Just as in *Dudnikov*, the Defendants in this case took actions that were performed for the very purpose of having their consequences felt in Colorado.  The Defendants not only foresaw that their conduct would be felt in Colorado, they intended it to be felt in Colorado.  The Defendants intended the injuries caused by their tortious filing of a baseless infringement complaint in Texas to leverage SpaceCo into the payment of royalties to settle their baseless claims.  The Tenth Circuit rejected "mere foreseeability" arguments in *Dudnikov*, and this Court should rejected the same arguments here for the same reasons.

The above analysis demonstrates that all three factors of the *Calder* test are met, and therefore the "purposefully directed" element of minimum contacts is satisfied.   Having determined that Mass and Mr. Moscovitch "purposefully directed" their activities at Colorado, the Court must consider the second element of minimum contacts: whether SpaceCo's injuries "arise out of" Defendants' contacts with Colorado.  As to the "arising out of" element, the Tenth Circuit observed as follows:

> As between the remaining but-for and proximate causation tests, we have no need to pick sides today. On the facts of this case, we are satisfied that either theory adopted by our sister circuits would support a determination that plaintiffs' cause of action arises from the defendants' contact with Colorado. That defendants' contact with Colorado, the sending of the NOCI to eBay and the ensuing e-mail exchange in which defendants threatened plaintiffs with suit, is a but-for cause of this action is clear. After all, if defendants had not claimed that plaintiffs were infringing their copyright, plaintiffs would have had no reason to seek a declaratory judgment that their actions did not run afoul of defendants' rights. The NOCI was also the cause in fact of the real world harm that plaintiffs seek to have remedied: the cancellation of their auction and the black mark on their eBay record. In the absence of the NOCI, plaintiffs would not have had to contend with either of those effects, and thus would have had no reason to attempt to hale defendants into court.

> We believe that the NOCI can also fairly be considered the proximate cause of plaintiffs' claim. In the NOCI, defendants swore under penalty of perjury that they had a good faith belief that plaintiffs' auction infringed their rights. The merits of plaintiffs' declaratory judgment action addresses the exact same question, and their claim for injunctive relief seeks to prevent future interference with plaintiffs' business, interference which defendants have threatened. More specifically, plaintiffs argue that defendants' infringement claim contained in the NOCI is incorrect, and that therefore their auction was improperly cancelled and their sales record erroneously smeared. The NOCI is thus at the very core of plaintiffs' suit.

*Dudnikov* at 1079.

Since *Dudnikov* leaves open the issue of whether but-for or proximate causation is the test for use in the Tenth Circuit, SpaceCo will analyze the issue under both tests. However, just as in *Dudnikov*, the result is the same under either test: SpaceCo's injuries clearly arise out of the Defendants' contacts with Colorado. As to but-for causation in this case, the reasoning of *Dudnikov* is exactly applicable here. That Defendants' contact with Colorado, the filing of the Texas action, is a but-for cause of this action is clear. After all, if Mass and Mr. Moscovitch had not claimed that SpaceCo was infringing their patent, SpaceCo would have had no reason to seek a declaratory judgment that its actions did not run afoul of Defendants' rights. The Texas action was also the cause in fact of the real world harm that SpaceCo seeks to have remedied: to recover the cost of defending the tortiously-filed Texas action, in which Mass inflicted the torts of abuse of process and malicious prosecution on SpaceCo. In the absence of the Texas action, SpaceCo would not have had to contend with either of those effects, and thus would have had no reason to attempt to hale Mass and Mr. Moscovitch into court.

Similarly, the proximate causation analysis of *Dudnikov* arrives at the same result applied to the facts of this case. The filing of the Texas action by the Defendants is the proximate cause

of SpaceCo's claim. In the Texas action, Defendants alleged that certain SpaceCo products infringed their patent rights. The merits of SpaceCo's declaratory judgment action addresses the exact same question.  Additionally, SpaceCo alleges in the First Amended Complaint that Defendants' infringement claim is baseless and a sham and calculated to extract royalty payments from SpaceCo that were not properly due to the Defendants, and that therefore SpaceCo was damaged by the tortious act of filing the Texas action.  The Texas action is at the very core of SpaceCo's suit.  Under either possible analysis of the issue, SpaceCo's injuries "arise out of" the Defendants' contacts for Colorado.  Therefore, under Tenth Circuit law, the Defendants have minimum contacts with Colorado.

        **B.**      **Exercising Jurisdiction Over the Defendants in Colorado Does Not Offend Traditional Notions of Fair Play and Substantial Justice.**

As demonstrated above, the Defendants have "minimum contacts" with the State of Colorado relative to the tort claims alleged in the Complaint.  Once "minimum contacts" have been established, the Court must next consider whether the exercise of personal jurisdiction would "offend traditional notions of fair play and substantial justice." *Dudnikov* at 1080 *citing Int'l Shoe Co. v. Washington*, 326 U.S. at 316 (1945). Mass and Mr. Moscovitch bear the burden of showing that traditional notions of fair play and substantial justice would be offended by jurisdiction in Colorado, for, with minimum contacts established, <u>it is incumbent on defendants to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable</u>." *Dudnikov* at 1080 *citing Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1280 (10th Cir. 2005)(emphasis added).  Mass and Mr. Moscovitch offer conclusory analysis of only one of the five factors enumerated in *Dudnikov* as being relevant to the "traditional notions of fair play and substantial justice" question.  A proper analysis of all of the

*Dudnikov* factors demonstrates that jurisdiction is proper in Colorado, and the Defendants have failed to carry their burden of showing a "compelling case" that jurisdiction is unreasonable.

In making the "traditional notions of fair play and substantial justice" inquiry courts must consider the following factors: (1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states [or foreign nations] in furthering fundamental social policies. *Dudnikov* at 1080 *citing OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1095 (10th Cir.1998).  A proper analysis of these five factors shows that none of them favors the Defendants in this case, and therefore, jurisdiction in proper in Colorado.

As to the first factor, the burden on the defendant, it is clear that litigating in Colorado places no burden on the Defendants in this case.  Mass and Mr. Moscovitch, by filing the Texas action, have already demonstrated "their willingness to litigate in some federal court in the United States." *Dudnikov* at 1080.  Mass is a corporation with its place of business in Ontario, Canada, and Mr. Moscovitch is an individual residing in Ontario, Canada.  (See First Amended Complaint, ¶¶ 2 and 3).  The Defendants' counsel is located in Washington D.C.  The Defendants claim that this case should be heard in the Eastern District of Texas.  Thus, even in the Defendants' preferred venue, the Defendants and their counsel will be required to travel a significant distance.[6]  However, the Defendants' preferred venue in Marshall, TX is a burdensome and out-of-the-way place.  To get to Marshall TX, one flies into the nearest major airport in Dallas, TX, and then is required to drive three (3) hours east to the town of Marshall.

---

[6] In *In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009), the Federal Circuit held that for witnesses and parties located outside of the United States, who would be required to travel a great distance no matter where the case proceeds, no jurisdiction in the United States in more convenient or more burdensome than any other for the case to proceed in.

Having this case proceed in Denver, CO poses less of a burden than proceeding in the Defendants' preferred venue, because the Defendants and their counsel can easily travel to Denver.  The Defendants' travel to Denver will be easier than the travel to their preferred venue, because no significant ground transportation is required in Denver.  "As in any case in which the parties reside in different fora, one side must bear the inconvenience of litigating 'on the road.'" *Dudnikov* at 1081.  Having this case proceed in Denver poses no more of a burden on the Defendants than having this case proceed in their preferred venue, and actually it poses less of a burden on the Defendants.  This factor weighs in favor of jurisdiction in Colorado.

The second factor, the forum state's interests in resolving the dispute, clearly favors jurisdiction in Colorado.  "States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1096 (10th Cir.1998).  Thus, Colorado has in important interest in providing a forum in which SpaceCo can seek redress for the injuries caused by the Defendants.  On the other hand, the Defendants' preferred venue in Texas has no interest in resolving this dispute. Neither SpaceCo nor either of the Defendants are residents of Texas or have any contacts with Texas, other than the suit which was originally filed there.  The resolution of SpaceCo's tort claims requires the application of Colorado law, and the Texas court has no experience applying Colorado law.  Colorado courts should apply Colorado law.  Texas has no interest in the resolution of this dispute, while Colorado has a strong interest in the resolution of this dispute.  This factor clearly favors jurisdiction in Colorado.

The third factor, the plaintiff's interest in receiving convenient and effectual relief, favors jurisdiction in Colorado.  When Mass and Mr. Moscovitch originally filed their Texas action, they named thirty (30) defendants, including SpaceCo. (See Exhibit "A," Hjort Declaration ¶ 2).

Of those original thirty, eleven (11) defendants settled with Mass and Mr. Moscovitch. (See Exhibit "A," Hjort Declaration ¶ 9).  The remaining nineteen (19) defendants were dismissed when Mass and Mr. Moscovitch dismissed the Texas action. (See Exhibit "A," Hjort Declaration ¶ 11).  Of those nineteen, only five (5) filed actions against Mass and Mr. Moscovitch. (See Exhibit "A," Hjort Declaration ¶ 11).  Thus, there are fourteen (14) defendants to the original action who have not filed their own lawsuit, nor have they been sued again by Mass and Mr. Moscovitch. (See Exhibit "A," Hjort Declaration ¶ 12).  Despite the fact that it has been over six months since the dismissal of the Texas action, Mass and Mr. Moscovitch have taken no steps to resume their enforcement of the patent-in-suit against almost half of the defendants in the Texas action. (See Exhibit "A," Hjort Declaration ¶ 12).  SpaceCo submits that if this case is not allowed to proceed in Colorado, Mass and Mr. Moscovitch may delay proceeding again on their claims of infringement to create a "cloud over SpaceCo's business."  The existence of Mass and Mr. Moscovitch's claims against SpaceCo, with no effective way to challenge those claims[7] will be greatly detrimental to SpaceCo's business.  Additionally, proof of SpaceCo's Fifth Claim of Relief, Government Contractor Immunity under 28 U.S.C. §1498, will require the issuance of subpoenas to third-party government contract holders located here in Denver, and the Texas court would have no jurisdiction to issue such subpoenas. (See Exhibit "A," Hjort Declaration ¶ 15).  SpaceCo requires final resolution of all of the Defendants' claims, requires resolution of its own tort claims, and requires the subpoena power of a Colorado court in the prosecution of this case.  For all of these reasons, SpaceCo's interest in receiving convenient and effectual relief favors jurisdiction in Colorado.

---

[7] There would be no way to challenge the Defendants' claims, because, as will be demonstrated below, the Defendants are not subject to personal jurisdiction in Texas.

The fourth factor, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, is the only factor that the Defendants argued applied in this matter, but their argument falls far short of the "compelling case" required to defeat jurisdiction in Colorado.  In support of this argument, the Defendants argue, incredibly, that they "have litigated the same patent-in-suit against the Plaintiff in Texas."  As was demonstrated above, it was Mass and Mr. Moscovitch who extinguished the Texas action in its infancy, before any of the substantive issues in the case had been decided.  Since none of the substantive issues were resolved in the Texas action between the Defendants and SpaceCo, there is no efficiency to be gained by litigating this case in Texas, instead of in Colorado.  The Defendants further argue that they have fully litigated the patent-in-suit against other parties in Texas.  While this may be true, it is of no moment to the efficiency analysis.  That Mass and Mr. Moscovitch litigated the patent-in-suit against parties other than SpaceCo, who had products markedly different from SpaceCo's products is irrelevant.  The issues of claim construction and infringement will be very different when SpaceCo's products are at issue than those of the prior case that the Defendants litigated in Texas.  Since these issues will be different, there will be no efficiency gained by litigating in Texas rather than in Colorado.  Additionally, SpaceCo has alleged tort claims against the Defendants in the First Amended Complaint.  These tort claims require the application of Colorado law, and a court in Colorado will be much more efficient at the resolution of claims under Colorado law than a Texas court would be.  The Defendants' arguments relative to judicial efficiency fall far short of the "compelling case" that they are required to show, and if anything, this factor favors jurisdiction in Colorado.

The fifth factor, the shared interest of the several states [or foreign nations] in furthering fundamental social policies, especially as analyzed in *Dudnikov*, supports jurisdiction in

Colorado.  The Defendants presented no argument relative to this factor.  However, the analysis of this factor in *Dudnikov* is instructive for this case.  Since Mass and Mr. Moscovitch are Canadian, it might be argued that Canadian social policies are impacted by the exercise of jurisdiction here.  That argument was easily rejected in *Dudnikov*, wherein the court recognized that the acts which subjected the British corporation to jurisdiction in the United States were done at the approval and direction of the British corporation.  *Dudnikov*  at 1081.  In this case, there can be no question that Mass and Mr. Moscovitch approved and directed the filing of the Texas action, and therefore there is no need to consider any Canadian social policies in this analysis.  To the extent that Mass and Mr. Moscovitch argue that the federal interest in allowing patent holders to alert potential infringers of their rights and encouraging the settlement of such potential disputes, is implicated in this case, similar such arguments were rejected in *Dudnikov*. *See e.g. Dudnikov* at 1082.  "Assuming without deciding that it would be unreasonable to found jurisdiction solely on a cease-and-desist letter, this case is readily distinguishable. Defendants' NOCI went well beyond providing notice to plaintiffs of the claimed infringement and seeking settlement; it purposefully caused the cancellation of their auction and allegedly threatened their future access to eBay and the viability of their business." *Id.*  Just as in *Dudnikov*, Mass and Mr. Moscovitch went well beyond merely sending a cease-and-desist letter in this case.  Instead, they purposefully filed the baseless Texas action with the intent of extracting royalties from SpaceCo in the settlement of their baseless claims.  As will be outlined below, this Court has jurisdiction over the patent claims in the First Amended Complaint under the Federal Circuit's holding in *Silent Drive, Inc. v. Strong Industries, Inc.,* 326 F.3d 1194, 1202 (Fed. Cir. 2003).  There are no interests in the furthering of social policies which mitigate against jurisdiction in Colorado.  Thus, all of the five (5) factors set forth in *Dudnikov* relative to the "traditional notions of fair

play and substantial justice" question favor jurisdiction in Colorado, and none support a "compelling case" for jurisdiction elsewhere.  For these reasons, this Court unquestionably has specific personal jurisdiction over the Defendants with respect to the tort claims alleged in the First Amended Complaint.

> **3.      When the Court has Personal Jurisdiction Over Non-Patent Claims, Federal Circuit Precedent Supports the Invocation of Supplemental Jurisdiction over Patent Claims That Arise Out of a Common Nucleus of Operative Fact.**

Having established that this Court has specific personal jurisdiction over the Defendants with respect to the tort claims in the First Amended Complaint, under Federal Circuit precedent, this Court can use its supplemental jurisdiction[8] to hear the patent claims alleged in the First Amended Complaint.  In a similar fact pattern to the present case, the Federal Circuit held in *Silent Drive, Inc. v. Strong Industries, Inc.,* 326 F.3d 1194 (Fed. Cir. 2003) , that when a complaint alleges both patent-related and non-patent-related claims, and when personal jurisdiction is proper over the non-patent-related claims, the court may invoke supplemental jurisdiction to hear the patent-related claims, even if the court would not otherwise have personal jurisdiction with respect to the patent claims.

*Silent Drive* concerned allegedly tortious actions taken by Strong Industries in Texas in the enforcement of its patent that resulted in damages to Silent Drive in Iowa.  Silent Drive pointed to three actions taken by Strong Industries that resulted in damages.  First, Strong Industries obtained a Texas state court injunction enjoining Silent Drive (by name) and attempted to enforce that injunction. *Silent Drive* at 1198.   The injunction arose out of litigation

---

[8] Although this section argues for the Court to invoke its supplemental jurisdiction over the Defendants, this section should not be construed to concede that the Court lacks personal jurisdiction over the Defendants with respect to the patent claims alleged in the First Amended Complaint.  There are other independent bases for the Court to exercise personal jurisdiction over the Defendants relative to the patent claims, which will be discussed in greater detail below.

in which Strong Industries alleged that certain third parties had misappropriated Strong Industries' trade secrets in creating new axle design. *Id.* Silent Drive was not a party to the case, and no one employed by the company participated in it. *Id.*  However, in the final injunction, the Texas court entered final judgment for Strong Industries and enjoined Silent Drive by name from producing axles according to Strong's purportedly proprietary design. *Id.*

Second, Strong Industries obtained a patent under which the design of Silent Drive's axle allegedly infringed. *Id.*  Third, Strong Industries sent letters to Silent Drive in Iowa and Silent Drive's customers outside Iowa concerning the Texas injunction and the patent which Silent Drive allegedly infringed. *Id.*  Following these three actions, Silent Drive filed a complaint in the United States District Court for the Northern District of Iowa containing three counts. *Silent Drive* at 1199.  Count I sought declaratory relief that "[p]laintiff, as a non-party to the Texas case, and a person who was not notified, on whom process was not served, and over whom jurisdiction was not present is not and cannot be bound by the injunction entered by the State Court in Texas." *Id.*  Count II alleged that the letters the defendants had sent to Silent Drive's customers "deter [red] prospective customer relationships and interfere[d] with existing customer relationships in a manner that [wa]s improper, [and] cause[d] harm to Plaintiff ... Such acts as above alleged constitute tortious interference with actual and prospective contractual relationships, and as such constitute tortious conduct, which will continue unless enjoined by this Court." *Silent Drive* at 1200.   Count III asked for a declaration of patent invalidity and non-infringement with regard to the Strong's patent and alleged that the "[p]laintiff has been threatened, if not directly, impliedly, with respect to patent infringement of Strong's '698 patent." *Id.*

Strong Industries moved to dismiss the complaint for lack of personal jurisdiction. *Id.*

Focusing on the patent claims in the complaint, the Iowa district court found that Strong Industries lacked "minimum contacts" with Iowa, and that although the letters were purposefully directed at Iowa and arose out of the patent count, the letters could not confer personal jurisdiction under Federal Circuit precedent. *Id.*  On appeal to the Federal Circuit, the Circuit reversed dismissal for lack of personal jurisdiction.

In its analysis of the personal jurisdiction issue, the Federal Circuit focused on whether the Iowa court had personal jurisdiction over the non-patent claims.  The Federal Circuit determined that the Iowa court did have personal jurisdiction over Silent Drive's first claim, its claim for a declaration that it was not bound by the Texas injunction.[9]  Applying the test of *Calder v. Jones*, the Federal Circuit found that Silent Drive's injuries both "arose out of" and were "related to" Strong Industries actions taken in Texas. *Silent Drive* at 1204-1205.  As a result, the Federal Circuit determined that Strong Industries had minimum contacts with Iowa, the exercise of personal jurisdiction over Strong Industries in Iowa was proper. *Id.*

Having found that personal jurisdiction existed with respect to one of the counts in Silent Drive's complaint, the Federal Circuit turned to the question of whether the Iowa court could also exercise jurisdiction over Strong Industries with respect to the count in the complaint that sought a declaration of non-infringement and/or invalidity of the Strong Industries patent.  On this point, the Federal Circuit held as follows:

> Having determined that the district court had personal jurisdiction here with respect to Count I, we must now decide whether the district court also had personal jurisdiction with respect to the other two counts under the supplemental jurisdiction statute (28 U.S.C. § 1367(a)), which provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so

---

[9] The Federal Circuit determined that Silent Drive had failed to adequately plead federal subject matter jurisdiction as to its tortious interference claims in Count II of the complaint, and therefore did not pass on the issue of whether personal jurisdiction existed with respect to the tortious interference claims.

related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." This statute confers supplemental jurisdiction with respect to both subject matter and personal jurisdiction where the "same case or controversy" requirement is satisfied. *Inamed*, 249 F.3d at 1362–63, 58 USPQ2d at 1778. See also 13 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3523.1 (2002). The Supreme Court has held that such claims must arise out of "a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *accord Fielder v. Credit Acceptance Corp.*, 188 F.3d 1031, 1039 (8th Cir.1999). The other two counts satisfy this test since, like Count I, they concern the efforts of Strong Industries and Brooks Strong to prevent Silent Drive from manufacturing the MAXLE. *Inamed*, 249 F.3d at 1362–63. See also 13 Wright & Miller, supra, § 3523.1.

*Silent Drive, Inc. v. Strong Industries, Inc.,* 326 F.3d 1194, 1206 (Fed. Cir. 2003).

Applying the holding of *Silent Drive, Inc. v. Strong Industries, Inc.*, to the present case clearly demonstrates that the Court has supplemental jurisdiction over the patent-related claims alleged in the First Amended Complaint.  The facts in this case are essentially the same as in *Silent Drive*.  Just as in *Silent Drive*, the Defendants in this case improperly tried to enforce purported patent rights, in Texas, against an out-of-state company, SpaceCo.  Although the claims asserted in the respective cases differ slightly, the reasoning of the Federal Circuit is equally applicable in this case as it was in *Silent Drive*.  This Court can use supplemental jurisdiction under 28 U.S.C. § 1367(a) to hear SpaceCo's declaratory judgment claims, because these claims arise from a common nucleus of operative fact with the tort claims alleged in the First Amended Complaint.  SpaceCo's declaratory judgment claims clearly meet this test because, like the claims for Abuse of Process and Malicious Prosecution, they concern the efforts of Mass and Mr. Moscovitch to assert their baseless infringement claims against SpaceCo in a manner calculated to extract undue royalties from SpaceCo.  This Court has personal jurisdiction over the Defendants with respect to the tort claims in the First Amended Complaint.  Under the

holding of *Silent Drive, Inc. v. Strong Industries, Inc.,* Federal Circuit precedent permits this Court to exercise supplemental jurisdiction under 28 U.S.C. § 1367(a) to also decide patent claims that relate to the tort claims alleged in the Complaint.   For these reasons, personal jurisdiction over the Defendants with respect to all claims in the First Amended Complaint is proper, and the Defendants' Motion to Dismiss must be denied.

### 4.   Fed. R. Civ. P. 4(k)(2) Provides an Alternative Independent Basis for Jurisdiction Over the Defendants.

The Defendants offer a conclusory analysis of Fed. R. Civ. P. 4(k)(2) and conclude that it does not support jurisdiction in Colorado.  A proper analysis of Fed. R. Civ. P. 4(k)(2), shows that the Rule provides an independent basis for exercising jurisdiction over these Defendants in Colorado[10].  Fed. R. Civ. P. 4(k)(2 provides:

> (2) Federal Claim Outside State-Court Jurisdiction. For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
> (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
> (B) exercising jurisdiction is consistent with the United States Constitution and laws.

Rule 4(k)(2) is said to approximate a federal long-arm statute.  Application of Rule 4(k)(2) occurs  when three conditions are met[11]: (1) the cause of action must arise under federal law; (2) the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction; and (3) the federal court's exercise of personal jurisdiction must comport

---

[10] SpaceCo believes that it has properly demonstrated above that this Court has personal jurisdiction over the Defendants with respect to all claims. To the extent that the application of Rule 4(k)(2) requires that the defendants not be subject to personal jurisdiction in any state, the application of Rule 4(k)(2) is argued in the alternative to SpaceCo's other arguments for personal jurisdiction set forth above.

[11] In this case, the Defendants only argue that the second condition is not met.  Condition one is obviously met, as at least some of SpaceCo's claims arise under federal law. (See First Amended Complaint ¶4 and 8).  Also, condition three is met, as jurisdiction comports with due process (See Section II(1)(B) of this brief).

with due process. *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114 (9th Cir. 2002).

The Defendants' sole contention with regard to the applicability of Rule 4(k)(2) is: "[b]ecause Defendants filed the Texas case, they are properly subject to personal jurisdiction in Texas and there is an independent basis for jurisdiction there." There is no basis in law for the Defendants' claim; in fact just the opposite is true, courts have routinely recognized that prior litigation in a forum does not constitute activity that is sufficient to confer personal jurisdiction over such a litigant. For example, in *Soma Medical International v. Standard Chartered Bank*, the Tenth Circuit held that "fil[ing] five civil cases in Utah prior to 1992 to recover monies and/or foreclose on trust deeds" were not "the kind of 'substantial and continuous local activity' necessary to subject [a defendant] to general jurisdiction." 196 F.3d 1292, 1296 (10th Cir.1999) (*quoting Arguello v. Woodworking Mach. Co.*, 838 P.2d 1120, 1122 (Utah 1992)). Similarly, in *United States v. Swiss American Bank, Ltd.*, the First Circuit applied federal law and found general jurisdiction lacking where, among other contacts, "in 1990, [defendant] was an appellant in a lawsuit in a [forum] court," but "ha[d] no office, personnel, or telephone number in the [forum]." 274 F.3d 610, 619–21 (1st Cir.2001).

SpaceCo submits that if this case were brought in Texas, the Defendants would be before a Texas judge arguing that no personal jurisdiction existed over them, because personal jurisdiction cannot be based solely on their previous litigation in Texas.[12] And the Defendants would be correct to argue this point, since the case law clearly provides that prior litigation cannot be a basis for personal jurisdiction. On the other hand, the Defendants cannot come

---

[12] The Defendants would also likely argue that an extension of the holdings of *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012 (Fed. Cir. 2009) and *Campbell Pet Co. v. Miale*, 542 F.3d 879 (Fed. Cir. 2008) prevents exercise of personal jurisdiction over them in Texas because Federal Circuit precedent protects patent holders asserting their rights via cease-and-desist letter from subjecting themselves to personal jurisdiction.

before this Court and raise the clearly erroneous claim that they are subject to personal jurisdiction in Texas, based on their prior litigation there.  The Defendants are Canadian residents, and they have no connection to Texas, other than having litigated their patent there once before.  The Defendants' conclusory argument that their prior litigation in Texas submits them to personal jurisdiction is contrary to established precedent.  Since the Defendants are not properly subject to personal jurisdiction in Texas, the provisions of Fed. R. Civ. P. 4(k)(2) apply to them, and application of this rule provides an alternative, independent basis for jurisdiction in Colorado.

> **5.**     **Venue for this Case is Proper in Colorado; Venue for this Dispute has Never Been Proper in Texas.**

The proper venue for this case in Colorado, and not Texas as the Defendants suggest. Texas has never been an appropriate venue for this dispute.  The Defendants admit that they bear the burden of showing the venue is improper in Colorado, and their minimal analysis of the venue issue falls far short of carrying this burden.  As an initial matter, SpaceCo submits that once the Court has found that personal jurisdiction exists over the Defendants in Colorado, then venue is also proper in this forum under 28 U.S.C. § 1391(b)(3).  The Defendants allege that § 1391(b)(3) should not apply, because Texas is an appropriate forum.   As demonstrated above, in Section II(3) of this brief, Texas is not an appropriate forum, because personal jurisdiction does not arise there over these Defendants based on their prior litigation in that forum.  Personal jurisdiction is proper over the Defendants in Colorado, pursuant to the analysis offered above. Once personal jurisdiction has been established, venue is also proper under 28 U.S.C. § 1391(b)(3).  The Defendants' claims of improper venue can be dismissed on this point alone.

SpaceCo submits that venue is also proper in Colorado under 28 U.S.C. § 1391(b)(2). Under § 1391(b)(2) "venue is not limited to the district with the *most* substantial events or omissions." *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.,* 618 F.3d 1153 (10th Cir. 2010). Rather, Section 1391(a)(2) instead "contemplates that venue can be appropriate in more than one district ... [and] permits venue in multiple judicial districts as long as a substantial part of the underlying events took place in those districts." *Id.*

The Tenth Circuit requires a two-part analysis when reviewing challenges to venue under § 1391(a)(2).  First, the nature of the plaintiff's claims and the acts or omissions underlying those claims must be examined.  *Id.*  Second, the court must determine whether substantial "events material to those claims occurred" in the forum district.  *Id.*  The substantiality requirement is satisfied upon a showing of "acts and omissions that have a close nexus" to the alleged claims. *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.,* 618 F.3d 1153 (10th Cir. 2010) ("We look ... not to a single triggering event prompting the action, but to the entire sequence of events underlying the claim."); see also 17 James Wm. Moore et al., Moore's Federal Practice § 110.04[1] (3d ed.2010) (stating that, when engaging in the substantiality analysis, courts "ought not focus solely on the matters that gave rise to the filing of the action, but rather should look at the entire progression of the underlying claim.)

While the act of filing the Texas action occurred in Texas, other acts that have a close nexus to SpaceCo's tort claims occurred here in Denver.  The Texas action was served on SpaceCo here in Denver.  Most importantly, however, all of the damages caused by the Texas action accrued here in Denver.  The bills and charges for the defense of the Defendants' tortious suit came to SpaceCo's headquarters in Colorado, and in paying the costs for the defense of this baseless and tortious suit, SpaceCo was injured in Colorado. (See Exhibit "A," Hjort Declaration

¶ 14).  Because all of SpaceCo's injuries accrued in Denver, substantial events material to the claims occurred here in the District of Colorado.  For this reason, venue is proper in Colorado under 28 U.S.C. § 1391(b)(2).

It should also be noted that venue for this dispute has never been proper in Texas.[13]  The Defendants chose to bring their baseless suit in the Eastern District of Texas for tactical purposes, because the Eastern District of Texas is considered to be a forum very favorable to patent holders.  None of the traditional venue considerations indicate that Texas is an appropriate venue for a dispute between SpaceCo and these Defendants.  SpaceCo has never owned or maintained an office or facility in Texas. (See Exhibit "A," Hjort Declaration ¶ 16).  Likewise, on information and belief the Defendants have never owned or maintained an office or facility in Texas. (See Exhibit "A," Hjort Declaration ¶ 17).  SpaceCo has no employees in Texas. (See Exhibit "A," Hjort Declaration ¶ 18).  Likewise, on information and belief the Defendants have no employees located in Texas. (See Exhibit "A," Hjort Declaration ¶ 19).  All of SpaceCo's operations are based in Denver and all of SpaceCo's witnesses who have knowledge of sale and design of the products accused of infringement reside in Denver, and there are no SpaceCo witnesses in Texas. (See Exhibit "A," Hjort Declaration ¶ 20).  Similarly, the Defendants are all resident in Toronto, Canada and on information and belief, all of their witnesses and evidence will come from Toronto and none will come from Texas. (See Exhibit "A," Hjort Declaration ¶ 21).  Thus, none of the proofs or witnesses relative to this matter are in Texas; none of the parties are residents of Texas, such that Texas has an interest in deciding this case; and Texas will not be more convenient for any witnesses to travel to.  The only reason that the Defendants initially brought their suit in Texas to obtain a tactical advantage in their baseless suit; they should not

---

[13] SpaceCo was contemplating bringing a motion to change venue in the Texas action before the Defendants unexpectedly dismissed it.

now be rewarded for this behavior by having this case heard in Texas.  For all of the above reasons, venue for this case has never been proper in Texas.

Finally, the Defendants' reliance on *Hicks v. Cadle*, 2012 U.S. Dist. LEXIS 137499 (D. Colo. Sept. 25, 2012) is easily distinguishable[14].  The venue discussion of *Hicks v. Cadle* is mere dicta, because as the court noted in the second paragraph of the decision, the case was already dismissed and a satisfaction of judgment had been filed, and therefore the court had no jurisdiction to hear a motion to file a supplemental complaint.  The court went on to include a few sentences of dicta regarding the appropriate forum for the case, but this dicta has no bearing on the present case.  The dicta from *Hicks v. Cadle* offers no analysis of the venue issue and does not even apply Tenth Circuit cases to the issue.  *Hicks v. Cadle* was decided on the basis of the court lacking jurisdiction; the brief comments on venue for abuse of process claims in that decision are mere dicta.

**6.    Although Unnecessary for Deciding This Motion, This Court Also Has General Personal Jurisdiction Over the Defendants.**

The Court has specific personal jurisdiction over the Defendants, as set forth above. Since specific personal jurisdiction has already been established, it is unnecessary for the purposes of this motion to determine if the Court has general personal jurisdiction over the Defendants.  However, since the Defendants devote a significant portion of their analysis to general jurisdiction issues, for the sake of completeness, SpaceCo wishes to briefly address these issues.

---

[14] The facts of *Hicks v. Cadle* are also readily distinguishable from the present case. In *Hicks*, the plaintiff was awarded a large judgment in Colorado, which he then registered in Ohio.  The Defendants then brought suit in Ohio against the plaintiff for tortious interference, intentional infliction of emotional distress and RICO violations. Plaintiff sought, and was denied, leave to bring abuse of process claims in Colorado relative to the Ohio suit, when such claims could have been brought as counter-claims in the Ohio suit.  In the present case, there is no pending suit that SpaceCo could bring a counter-claim in for its tort claims.

The Defendants do not dispute the fact that they have sold products in Colorado for seven of the last eight years.  (See Declaration of Raymond Wilk at ¶¶ 13-18).  The Defendants downplay the quantities of goods sold in these transactions, and argue that their conduct is analogous to that found in cases such as *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408 (1984); *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012 (Fed. Cir. 2009); and *Campbell Pet Co. v. Miale*, 542 F.3d 879 (Fed. Cir. 2008).

The Defendants' representations regarding their sales in other cases seem especially relevant to the veracity of their claims regarding their sales in Colorado.  For instance, in a co-pending case in the Southern District of New York, the Defendants submitted a declaration from Mr. Wilk which alleges that between 2005 and 2012, the Defendants had only 172 sales in New York, including no sales in 2009, 2011 or 2012. (See Hjort Declaration, Ex. 2 ¶¶15-16). Similarly, in a co-pending case in the Eastern District of Pennsylvania, the Defendants submitted another declaration from Mr. Wilk alleging that between 2005 and 2010, they had only 27 sales in Pennsylvania, and no sales in 2011 or 2012. (See Hjort Declaration, Ex. 3 ¶ 13).

The Defendants' actions cannot be analogized to cases such as *Helicopteros, Autogenomics* or *Campbell Pet,* because these Defendants, unlike the defendants in all of those cases, do not seriously carry on the business of selling their products to the public.  Instead, on information and belief, most of the Defendants' revenue comes from the licensing of their purported patent rights.  Thus, in cases such as *Helicopteros, Autogenomics* or *Campbell Pet,* general personal jurisdiction was not found where the defendant's sales in a forum, compared to their overall sales, were paltry.  Here, all of the Defendants' sales in the United States are paltry, as evidenced by their claims that they have minimal sales in major U.S. markets.  The logic of *Helicopteros, Autogenomics* or *Campbell Pet* does not apply to these Defendants.  Instead,

because of the fact that the Defendants have sold product in Colorado for seven of the last eight years, and regardless of the quantity sold, they should be found to have "continuous and systematic" contacts with Colorado, justifying general personal jurisdiction over them.

## III.    Conclusion

The Court has specific personal jurisdiction over the Defendants with respect to the tort claims alleged in the First Amended Complaint.  The Court may exercise Supplemental Jurisdiction over the Defendants with respect to the patent claims alleged in the First Amended Complaint.  Other bases for this Court to exercise personal jurisdiction over these Defendants also exist.  Venue is proper in Colorado and is not proper in the venue suggested by the Defendants.  For all these reasons, the Court should DENY the Defendants' Motion to Dismiss the Complaint.

Dated this 21st day of February, 2013.

In accordance with D.C.COLO. L. Civ. R. 5.6 and D.C.COLO. ECF Procedures §V a duly signed original of this document is on file at undersigned counsel's office and will be made available for inspection by other parties and/or the Court upon request.

Respectfully Submitted,

BY: ____s/Carl A. Hjort, III_____
Carl A. Hjort, III, Esq.
Colorado Bar No.: 42108
SpaceCo Business Solutions, Inc.
13100 East Albrook Drive
Suite 100
Denver, CO 80239
Telephone: 303-350-2204
E-mail: chjort@spaceco.com

Attorney for Plaintiff, SpaceCo Business Solutions, Inc.

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 21st day of February, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, and served a copy via email as follows:

Robert A. Auchter
McKool Smith, PC-DC
1999 K Street, N.W.
Suite 600
Washington, DC 20006-1011
202-370-8303
Fax: 202-370-8344
Email: rauchter@mckoolsmith.com

s/Carl A. Hjort, III
Carl A. Hjort, III, Esq.